# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MASIE N.,** [1] <br><br> Plaintiff, <br><br> v. <br><br> **LELAND C. DUDEK,** <br> **Acting Commissioner of Social Security,** [2] <br><br> Defendant. | No. 22-cv-2224-MAU |

## MEMORANDUM OPINION

Plaintiff Masie N. seeks Disability Insurance ("DI") Benefits under the Social Security Act. She claims to have diabetes, hypertension, neuropathy, and glaucoma of both eyes. *See* ECF Nos. 11 ("AR") at 229; 18-1 at 1.[3]  The Social Security Administration ("SSA" or "Commissioner") entered a final decision denying Plaintiff's claim on May 27, 2022.  AR at 1.  On appeal, Plaintiff seeks reversal or, alternatively, remand for reconsideration under 42 U.S.C. § 405(g).  ECF Nos. 18 at 1; 18-1 at 11.

---

[1]    Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited Mar. 12, 2025).

[2]    Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted for his predecessor. *See* Fed. R. Civ. P. 25(d).

[3]    Relevant docket entries are: (1) the Administrative Record (ECF No. 11 and its attachments); (2) Plaintiff's Motion for Judgment of Reversal (ECF No. 18 and its attachment); (3) Defendant's Opposition to Plaintiff's Motion for Judgment of Reversal and Motion for Judgment of Affirmance (ECF Nos. 19, 20); and (4) Plaintiff's combined Opposition to Defendant's Motion for Judgment of Affirmance and Reply in Support of her Motion for Judgment of Reversal (ECF Nos. 21, 22).  Citations are to the page numbers provided at the bottom of each page.

Plaintiff argues that the Administrative Law Judge ("ALJ") erred in his assessment of Plaintiff's Residual Functional Capacity ("RFC") in two ways: 1) by failing "to properly evaluate the opinion of . . . Plaintiff's primary care physician"; and 2) by failing "to properly consider Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms." *Id.* at 1. The Commissioner contests each argument and seeks affirmance. *See generally* ECF No. 19. Upon review of the Administrative Record, the Parties' briefs, and the relevant law, the Court **DENIES** Plaintiff's Motion for Judgment of Reversal (ECF No. 18), and **GRANTS** Defendant's Motion for Judgment of Affirmance (ECF No. 19).

## BACKGROUND

### I.    The Social Security Act

In response to the Great Depression, Congress enacted the Social Security Act ("the Act") to support individuals unable to work, including those unable to work due to disability. *See Helvering v. Davis*, 301 U.S. 619, 640–45 (1937) (outlining Act's general purposes); *accord Flemming v. Nestor*, 363 U.S. 603, 608 (1960); *see also Smith v. Berryhill*, 587 U.S. 471, 475 (2019). To qualify for DI benefits, a claimant must show they are "under a disability" as defined in the Act. 42 U.S.C. § 423(a)(1)(E); *see also Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) (observing that benefits exist to assist those with disabilities who are "without the ability to sustain themselves"). A person is "under a disability" when they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner employs a five-step test to evaluate whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." *Id.* Second, the ALJ considers whether the claimant has

a "severe medically determinable physical or mental impairment" or severe "combination of impairments" lasting for at least twelve consecutive months. *Id.*; *see* 20 C.F.R. § 404.1509. Third, the ALJ determines whether the claimant's impairment(s) is among those disabilities in a regulatory listing that conclusively establishes disability. 20 C.F.R. § 404.1520(a)(4). These "Listings" are various physical and mental conditions that are defined in terms of specific medical signs and symptoms and are presumed severe enough to preclude gainful employment. *See* 20 C.F.R. §§ 404.1520(a)(4), (d) 416.920(a)(4), (d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Fourth, if a claimant did not establish disability at step three, the ALJ assesses a claimant's RFC and past relevant work. 20 C.F.R. § 404.1520(a)(4). Finally, the ALJ considers whether the claimant can perform other work in the national economy considering the claimant's age, education, work experience, and RFC. *See id.*; *see also Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). The claimant bears the burden of proof at the first four steps. *Butler*, 353 F.3d at 997. At step five, the burden shifts to the Commissioner to demonstrate the claimant can perform specific jobs available in the national economy. *Id.*

The RFC is "what an individual can still do despite his or her limitations." S.S.R. 96–8p, 1996 WL 374184, at *2; 20 C.F.R. § 404.1545(a)(1). It is an assessment "of the extent to which an individual's medically determinable impairment(s), including any related symptoms . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical or mental activities." S.S.R. 96–8p, 1996 WL 374184, at *2. The RFC reflects an individual's "*maximum* remaining ability to do sustained work activities." *Id.* The ALJ may ask a vocational expert to testify as to whether the claimant can perform other work due to her RFC. *Callahan v. Astrue*, 786 F. Supp. 2d 87, 90 (D.D.C. 2011).

## II.    Plaintiff's Disability Claims and Procedural History

Plaintiff was born in November 1969.  AR at 75.  At the time of the administrative hearing, she was fifty-one years old and held an associate's degree.  *Id.* at 43–44, 75.  Plaintiff's professional history primarily included working as a cafeteria manger, a personal care aid, and driver for a rental car company, as well as working with children as a teacher or caregiver.  *Id.* at 45–53.  At the time of the administrative hearing, Plaintiff lived with her sister.  *Id.* at 61.

Plaintiff applied for DI benefits on October 2, 2019, due to hypertension, glaucoma of both eyes, type two diabetes, and neuropathy in the legs, hands, and feet arising from her diabetes.  *Id.* at 21, 75–76, 206–15.  In that application, Plaintiff alleged she became unable to work due to her disabling conditions on July 5, 2019.  *Id.* at 206.  Plaintiff later amended her application to allege a new onset date of March 27, 2020.  *Id.* at 44.  The SSA initially denied Plaintiff's application on January 24, 2020.  *Id.* at 75–81, 94–102.  Plaintiff requested that the SSA reconsider its denial, but the agency denied Plaintiff's application again on November 4, 2020.  *Id.* at 83–90, 103–12. Plaintiff then requested an administrative hearing before an ALJ.  *Id.* at 113–14.

## III.    The Administrative Hearing

At Plaintiff's May 18, 2021 hearing, the ALJ heard testimony from Plaintiff and a vocational expert.  *Id.* at 38–40, 43.

### A.  Plaintiff's Testimony

Plaintiff testified about her prior professional history.  *Id.* at 45–58.  She chronicled how she was last working full-time with two-year-olds as a teacher at a childcare center.  *Id.* at 52–58. The center shut down in March 2020 during the COVID-19 pandemic.  *Id.*  Plaintiff moved to part-time work when the center reopened that September.  *Id.*  She worked an average of twenty-five hours per week until December 2020, when she stopped working altogether.  *Id.*  Plaintiff noted that, before she stopped working, her supervisor told her to "step it up" due to her supervisor's

4

concerns about Plaintiff's progression and punctuality, which Plaintiff claimed stemmed from her health impairments. *Id.* at 53–54. In response to questioning from the ALJ, Plaintiff stated that she did not receive any special accommodations while working. *Id.* at 53–54. She later testified that this job involved picking up children weighing "maybe twenty to thirty pounds." *Id.* at 67.

Plaintiff noted that her severe impairments primarily consisted of "the diabetes and her loss of central . . . visual acuity," as well as "the retinopathy and sleep apnea." *Id.* at 58. Plaintiff's vision issues primarily concerned her vision at night. *Id.* Plaintiff described some of the symptoms she experienced that caused her to stop working:

> Well, I started having problems with my legs and my feet. I was like I have sharp pains in my legs to the point where my legs like kinda give out on me. And especially if I walk a long period of time. And then it's been some days when . . . I couldn't really get up cause . . . either my muscle spasm in my back would like cause me, you know, to be in pain. And I would take Tylenol to relieve it. And . . . I let my doctor know about it. And she told me I need to lose some weight, to make sure I take the medication I need to take.

*Id.* at 61–62. Plaintiff added that she had difficulties with obtaining her medication at times, which made her "diabetes even worse." *Id.* at 62. But she was "working on getting it under control" as it was an "ongoing thing . . . I need to get control of." *Id.*

In terms of sitting, standing, and walking, Plaintiff mentioned it took her "a minute or two" to stand up when sitting and that she experienced pain and needed to hold on to something for balance when doing so. *Id.* at 62–63. According to Plaintiff, she could only stand for thirty-five minutes at a time before experiencing muscle spasms and needing to walk around to balance herself. *Id.* at 62. She stated she could not walk for a long period of time, needing to find a place to sit after taking "maybe a couple steps" at the mall. *Id.* at 62. She also agreed that she could bend down to pick up a gallon of milk off the ground, but it would "take me a minute to bend down and get it." *Id.* at 63.

For treatment, Plaintiff testified that she took Tylenol in the morning to manage her pain. *Id.* at 63–64.  She also expressed how taking a warm shower, sometimes twice a day, eased her back and leg pain.  *Id.*

Plaintiff next testified about the tasks she could perform in her condition.  *Id.* at 64.  She stated she was able to "straighten up" her house "as much as I can," noting that washing her dishes required "four or five breaks in between" and that she could only do housework for five to ten minutes at a time.  *Id.*  She relayed that her brother did her grocery shopping, but that she was able to bathe and dress herself.  *Id.* at 64–65.[4]

### B.  Vocational Expert's Testimony

The ALJ also took testimony from vocational expert Irene Montgomery.  *Id.* at 66.  The ALJ asked Montgomery a series of questions regarding a hypothetical individual with the same age, education, and professional history as Plaintiff.  *Id.* at 66–69.  The ALJ then formulated several questions for Montgomery based on the hypothetical individual's profile:

> [A]ssume this individual can lift, carry, push, pull fifty pounds occasionally, twenty-five pounds frequently.  Can sit for six hours in an eight-hour workday. Stand and walk for six hours.  This individual can only frequently climb ramps and stairs, balance, stoop, kneel, crouch, crawl.  Can only occasionally climb ropes, ladders, or scaffolds.  Lastly, this individual can only occasionally be exposed to moving mechanic parts and unprotected heights.  No other limitations.

*Id.* at 69–70.

---

[4]    Plaintiff noted additional symptoms in her November 4, 2019 function report, including; dizzy spells, hand cramps, leg pain with walking or standing, back pain, an inability to sit for long, and blurry eyes.  *Id.* at 237.  In that report, Plaintiff wrote she could perform personal care for herself slowly, her pain affected her sleep, and that her brother reminded her to take medications and prepared her meals.  *Id.* at 237–42.  Plaintiff also reported she could drive, use public transportation, go out alone, handle money, and watch television.  *Id.*

Montgomery confirmed the hypothetical individual could perform all of Plaintiff's past jobs as actually and generally performed[5] in the national economy, including caring for children, being a personal care aid, managing a cafeteria, and working at a car rental store.  *Id.* at 70.

The ALJ then tweaked the hypothetical individual's profile slightly: "[A]ssume the same hypothetical individual as before.  This time the individual is further limited to a light exertion level.  Lift, carry, push, pull twenty pounds occasionally, ten pounds frequently.  All other limitations remaining the same."  *Id.* at 71.  Montgomery responded that such an individual would still be able to perform Plaintiff's past jobs of caring for children as generally performed and working as a food service director as actually and generally performed.  *Id.*  Montgomery further stated such an individual could perform other light, unskilled work, including as a cashier, housekeeper, or mail clerk.  *Id.* at 71–72.

When questioned by Plaintiff's counsel, however, Montgomery conceded that an individual who would miss work at least twice a month due to pain would not be able to perform any of any of the jobs discussed at the hearing.  *Id.* at 72.  Montgomery testified that such an individual could not maintain full-time employment if they could only stand for two hours during an eight-hour workday.  *Id.*

## IV.    The ALJ's Decision

On June 30, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.  *Id.* at 18.  In doing so, the ALJ tracked the five-step process.

---

[5]        In evaluating a claimant's past relevant work, an ALJ assesses whether an individual can perform this work as actually performed and generally performed.  Social Security Ruling 24–2p, 2024 WL 3291790, at *3 (June 22, 2024).  Actual performance concerns "the particular functional demands peculiar to the work the individual did."  *Id.* at *4.  General performance refers to "the occupation's functional demands as ordinarily required throughout the national economy."  *Id.*  This distinction is necessary because "as actually performed, an individual's job may have involved functional demands that are different from those generally required for the occupation throughout the national economy."  *Id.*

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 27, 2020, the amended onset date of her disability. *Id.* at 23–24. Second, the ALJ found that Plaintiff had the following severe impairments: (1) diabetes mellitus; (2) obesity; and (3) sleep apnea. *Id.* at 24–25. Third, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the impairments in the Listings. *Id.* at 25–26.

The ALJ formulated Plaintiff's RFC at step four, finding her medically-determinable impairments could reasonably be expected to cause her alleged symptoms. *Id.* at 27–28. In making this finding, however, the ALJ also took into account other medical evidence in the record and concluded that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was not entirely consistent with that evidence. *Id.* at 28. The ALJ reviewed the medical opinions of Drs. Eduardo Haim, a state medical consultant, and April Walker, Plaintiff's treating physician since 2014, in making this determination. *Id.* at 29–31.[6]

Specifically, the ALJ reviewed Plaintiff's medical records and concluded her "treatment has been conservative, her examinations have been relatively benign, and she retained the abilities to perform a range of medium work through December 2020." *Id.* at 28. The ALJ chronicled Plaintiff's periodic medical examinations for her diabetes and associated conditions from July 2019 to May 2021, finding that Plaintiff generally maintained intact sensation and muscle strength during this time, did not display any instability in either foot, and "demonstrated a mildly antalgic gait, at worst, but needed no assistive device." *Id.* at 28–29. The ALJ documented that Plaintiff maintained adequate control of her condition when complying with treatment, but had issues at

---

[6]     The ALJ mentioned the opinion of Dr. Ann Williams, another state medical consultant, who evaluated Plaintiff's claim in November 2020. *Id.* at 30. Dr. Williams opined there was insufficient evidence to evaluate Plaintiff's disability claim at that point in time. *Id.* at 83–90. The ALJ ultimately concluded Dr. Williams's opinion was "not a medical opinion" and, accordingly, did not evaluate it further. *Id.* at 30.

times obtaining and taking her diabetes medications. *Id.* The ALJ observed that "[d]espite testimony regarding back and leg pain, the [Plaintiff] endorsed few significant complaints of pain to her primary care or podiatry providers." *Id.* at 29.

The ALJ found, however, that Plaintiff possessed "periodic lower extremity swelling" at times, particularly on October 16, 2019, and April 5, 2021, when Plaintiff exhibited pitting and nonpitting bilateral edema[7] in her legs. *Id.* at 28–29. Still, the ALJ noted that Plaintiff "was [neither] prescribed compression stockings or advised on leg elevation," nor "referred to other specialists." AR at 29. And as of May 2021, Plaintiff's medical records reflected that her diabetes was under control, she had no specific complaints of pain, and she was not in distress. *Id.* The ALJ also pointed out that Plaintiff had been working part-time at a childcare center in December 2020. *Id.*

In weighing Plaintiff's medical records with the rest of the Administrative Record, the ALJ found Dr. Haim's January 2020 opinion persuasive. *Id.* at 29–30. Dr. Haim opined that Plaintiff could lift or carry fifty pounds occasionally and twenty-five pounds frequently, as well as stand, walk, and sit for around six hours in an eight-hour workday. *Id.* at 29. Dr. Haim "assessed no postural, manipulative, visual or environmental limitations" for Plaintiff. *Id.* The ALJ concluded that Dr. Haim's opinion that Plaintiff could do a range of medium work was consistent with the medical evidence available at the time of the doctor's review. *Id.* at 29–30. This evidence included "the longitudinal evidence[] showing full strength in the extremities and an unassisted gait," plus

---

[7]    "Edema is swelling caused by too much fluid trapped in the body's tissues," and is most likely to appear in the legs and feet. *Edema*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/edema/symptoms-causes/syc-20366493 (last visited Mar. 12, 2025). Pitting edema occurs when the skin "holds a dimple . . . after it's been pressed for a few seconds." *Id.*

Plaintiff's testimony that she was previously working at a childcare center until December 2020.

*Id.*

Conversely, the ALJ determined that Dr. Walker's April 2021 opinion was not persuasive.

*Id.* at 30.  The ALJ summarized Dr. Walker's opinion:

> [Plaintiff] was likely to be "off task" 5% of her day as a result of symptoms interfering with attention and concentration.  She indicated the claimant could maintain attention and concentration less than two hours before symptoms would cause her to need a break.  She would likely be absent from work two days per month as a result of her impairments or treatment.  She opined the claimant could lift or carry ten pounds continuously, twenty pounds occasionally; she cited back pain and obesity.  She opined the claimant could sit three hours and stand or walk four hours total in an eight-hour day and required the option to sit or stand at will.  She cited back pain and obesity.  She would not require the option to lie down, recline, or elevate her legs during the day.  She did not require the use of a cane or other assistive device to ambulate effectively.  She could reach overhead or in other directions frequently with bilateral hands; she could continuously handle, finger, and feel; she could occasionally push or pull.  Dr. Walker cited back pain and obesity.  There were no limits with the use of her feet.  She could never climb ladders, ropes, or scaffolds; she could rarely stoop, kneel, crouch, or crawl; she could frequently balance or climb ramps and stairs; she could continuously rotate her head and neck.  She could never be exposed to unprotected heights; could rarely be exposed to moving mechanical parts or extreme heat; she could occasionally be exposed to vibrations and pulmonary irritants; she could frequently be exposed to humidity and wetness but had no limitations with extreme cold or operating a motor vehicle.

*Id.* at 30.

The ALJ found that, despite Dr. Walker being Plaintiff's treating physician, the doctor's documented medical examinations, notes, or other record medical evidence did not support Dr. Walker's opinion.  *Id.*  The ALJ noted that Dr. Walker's 2020 examinations documented Plaintiff as having a normal gait, no leg edema, intact sensation, full muscle strength in her upper and lower extremities, and an unimpaired memory.  *Id.*  As for 2021, the ALJ observed that Dr. Walker's examinations reported that Plaintiff displayed no distress and possessed benign hypertension and controlled diabetes, though Dr. Walker did not include a full physical examination of Plaintiff in

her examination notes.  *Id.*  The ALJ also highlighted that Dr. Walker cited "back pain" as a reason for certain limitations, yet there was "no complaint of back pain or objective signs of spine impairment in her treatment notes."  *Id.*  The ALJ concluded that, although Dr. Walker had assessed Plaintiff as obese, Plaintiff had demonstrated full muscle strength in her extremities and intact sensation and had shown she could perform medium work until at least December 2020.  *Id.* at 30–31.  Instead, as the ALJ concluded, "the claimant's diabetes, obesity and sleep apnea as well as non-severe impairments are adequately accommodated by a range of medium work with postural and environmental restrictions."  *Id.*[8]

Based on these assessments, the ALJ determined that Plaintiff had the RFC to perform medium work with the following limitations:

> [Plaintiff] can lift, carry, push, or pull fifty pounds occasionally and twenty-five pounds frequently; can sit for six hours in an eight-hour workday and stand and walk for six hours in an eight-hour workday; can only frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can occasionally climb ropes, ladders, or scaffolds; can only occasionally be exposed to moving mechanical parts and unprotected heights.

*Id.* at 26.

As outlined above, the ALJ and vocational expert had a series of exchanges at Plaintiff's hearing concerning whether a hypothetical individual with the same age, education, and professional history as Plaintiff and the same RFC the ALJ found Plaintiff possessed at step four could perform work in the national economy.  *See Supra* Section III.B.  In line with the vocational expert's hearing testimony, the ALJ determined at step five that Plaintiff could perform her past work as a daycare worker as generally performed and as a cafeteria manger as actually and

---

[8]    The ALJ pointed out Plaintiff had "failed to attend a scheduled consultative examination" with a state medical examiner, making an opinion from that examiner concerning Plaintiff's alleged impairments unavailable for review.  *Id.* at 31 n.1.

generally performed after considering Plaintiff's age, education, work experience, and RFC.  *Id.* at 31–33.  The ALJ found that, even if Plaintiff was further limited to light work, she could still perform these previous jobs as well as other work the vocational expert detailed at the administrative hearing, including cashier, housekeeper, and mail clerk.  *Id.* at 32.  Thus, the ALJ determined Plaintiff was not "under a disability" for purposes of the Act and denied her request for DI benefits.  *Id.* at 33.  The ALJ's decision became final when the Appeals Council denied Plaintiff's request for review on May 27, 2022.  *Id.* at 1–4.

## LEGAL STANDARD

Federal district courts have jurisdiction to review final decisions of the Commissioner.  42 U.S.C. § 405(g).  The reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record as a whole and the correct application of the relevant legal standards.  *Id.*; *Butler*, 353 F.3d at 999; *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987); *Travis v. Bowen*, 633 F. Supp. 264, 265 (D.D.C. 1986).  "Substantial evidence is 'more than a mere scintilla,' and means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This standard "is a 'low bar.'"  *Katrina M. v. O'Malley*, No. 21-cv-3297, 2024 WL 4298806, at *5 (D.D.C. Sept. 26, 2024) (quoting *La. Pub. Serv. Comm'n v. Fed. Energy Regul. Comm'n*, 20 F.4th 1, 7 (D.C. Cir. 2021)).  Moreover, it "requires considerable deference to the decision rendered by the ALJ."  *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995).

Nevertheless, a reviewing court cannot abdicate its role to "carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weight given to the facts."  *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009).  The ALJ's decision must "include a

statement of . . . findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c). "Importantly, an ALJ cannot merely disregard evidence which does not support his conclusion." *Hartline v. Astrue*, 605 F. Supp. 2d 194, 203 (D.D.C. 2009).

The plaintiff "bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11–cv-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)); *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006). The Court should affirm if it finds the ALJ based their decision on substantial evidence and applied the correct legal standards. *See, e.g.*, *Hicks v. Astrue*, 718 F. Supp. 2d 1, 17 (D.D.C. 2010). The Court is also "mindful of the harmless-error rule," namely that "even if [the Court] perceive[s] error," it must "affirm the Commission's decision unless the error is prejudicial." *Saunders v. Kijakazi*, 6 F.4th 1, 5 (D.C. Cir. 2021) (citation omitted).

## DISCUSSION

Plaintiff argues the ALJ erred in two ways in formulating Plaintiff's RFC, and that, because of these errors, the ALJ's decision was not based on substantial evidence. ECF No. 18-1 at 4, 8. Specifically, Plaintiff claims the ALJ failed to: (1) properly evaluate the opinion of Dr. Walker; and (2) properly consider Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of her symptoms. *Id.* at 1. The Commissioner defends the ALJ's RFC determination, contending the ALJ: (1) reasonably concluded that Dr. Walker's opinion was unpersuasive; and (2) reasonably evaluated Plaintiff's complaints. ECF No. 19 at 13, 17.

Upon review of the record, the ALJ properly assessed Dr. Walker's opinion and explained why he found it unpersuasive. Further, in reaching his decision, the ALJ properly weighed

Plaintiff's statements about her symptoms against the other record evidence. Thus, the ALJ properly formulated Plaintiff's RFC, which was supported by substantial evidence.

## I.    The ALJ's RFC Requirements.

The RFC determination requires a "function-by-function" inquiry based on all the relevant evidence of a claimant's abilities. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *3 (July 2, 1996). This includes an "assessment of the following capacities: '[s]itting, standing, walking, lifting, carrying, pushing, and pulling.'" *Clark v. Astrue*, 826 F. Supp. 2d 13, 22 (D.D.C. 2011) (quoting SSR 96–8p, 1996 WL 374184, at *5). These capacities are referred to as the "seven strength demands." SSR 96–8p, 1996 WL 374184, at *5. A "function-by-function" analysis requires a '"narrative discussion' identifying the evidence that supports each conclusion." *Butler*, 353 F.3d at 1000 (quoting S.S.R. 96–8p, 1996 WL 374184, at *3, *7). Courts in this District use varying approaches to evaluate this narrative discussion requirement. *See Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 207 (D.D.C. 2017) (comparing cases); *Charles v. Astrue*, 854 F. Supp. 2d 22, 29–30 (D.D.C. 2012) (same). Some courts require the ALJ to evaluate and articulate each factor "in detail and not merely consider them during his decision making process." *Lane-Rauth*, 437 F. Supp. 2d at 67. Other courts conclude that sufficient narrative discussion "does not require written articulation of all seven strength demands." *Banks v. Astrue*, 537 F. Supp. 2d 75, 85 (D.D.C. 2008); *see also Kim M. v. Kijakazi*, No. 20-cv-2072, 2021 WL 4033060, at *7 (D.D.C. Sept. 3, 2021) (collecting cases). Even if a written articulation of each strength demand is not required, the ALJ must still provide a "thorough narrative discussion of Plaintiff's limitations" and build a "logical bridge" between the evidence and the ALJ's conclusions. *Contreras*, 239 F. Supp. 3d at 207; *see also Butler*, 353 F.3d at 1000; *Lane-Rauth*, 437 F. Supp. 2d at 67.

Relevant evidence in the record includes medical records, source opinions, and individual's subjective complaints about their condition. *See* 20 C.F.R. § 416.929(c)(1)–(3). When evaluating

a plaintiff's subjective complaints, the ALJ may consider evidence that a plaintiff is able to perform the normal activities of daily living. *See Goodman v. Colvin*, 233 F. Supp. 3d 88, 107 (D.D.C. 2017); *See also Butler*, 353 F.3d at 1004 (noting the ALJ may consider "the claimant's daily activities" in assessing a plaintiff's pain (citing 20 C.F.R. §§ 404.1529(c)(3)(i))); *Davis v. Apfel*, 239 F. Supp. 3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations."). Still, "a claimant need not prove she is bedridden or completely helpless to be found disabled." *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989); *see also Champion v. Califano*, 440 F. Supp. 1014, 1018 (D.D.C. 1977) (observing that the Act "was passed with understanding and compassion for the men and women of this nation who are unable to overcome on their own the hurdles that life has placed before them").

An ALJ need not "encompass the entirety of his analysis in any particular paragraph of his decision" so long as he "provide[s] a sufficient basis for this Court to understand his reasoning when viewing the decision as a whole." *Colter v. Kijakazi*, No. 20-cv-0632, 2022 WL 715218, at *11 (D.D.C. Mar. 10, 2022). Put another way, an ALJ is obligated to consider all relevant evidence but is not required to discuss every piece of evidence submitted. *Said S. v. O'Malley*, No. 22-cv-00362, 2024 WL 2152737, at *10 (D.D.C. May 14, 2024). Nonetheless, the ALJ "may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Id.* (citing *Demetria R. v. Kijakazi*, No. 20-cv-3227, 2022 WL 3142376, at *11 (D.D.C. June 30, 2022), *report and recommendation adopted*, 2022 WL 3139026 (D.D.C. Aug. 5, 2022)). Further, an ALJ must at least discuss evidence that contradicts the Commissioner's position. *See Lane-Rauth*, 437 F. Supp. 2d at 67 (citing *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)). If this standard is met, "the Commissioner's finding must be sustained even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the Commissioner's." *Ali v. Colvin*, 236 F. Supp. 3d 86, 90 (D.D.C. 2017) (citation, brackets, and internal quotation marks omitted). That said, courts will only consider the grounds the ALJ proffers and will not consider any *post hoc* rationalization the Commissioner offers on appeal to this Court. *See, e.g.*, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017).

In formulating the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." S.S.R. 96–8p, 1996 WL 374184, at *5 (internal quotation marks omitted). If the ALJ determines that the claimant has at least one severe impairment or combination of impairments, the ALJ must consider how the claimant's severe *and non-severe impairments* impact a claimant's physical and mental capacities while working. *See Cheryl S. v. Kijakazi*, No. 18-cv-1379, 2022 WL 21758804, at *10–11 (D.D.C. May 4, 2022); *report and recommendation adopted*, 2022 WL 21758803 (D.D.C. May 20, 2022) (remanding to agency because ALJ's decision did not "evidence an[] assessment of how [plaintiff]'s mental limitations, mild or not, impact her ability to perform her past work" after ALJ determined at step two that she had severe physical impairments); *see also* 20 C.F.R. §§ 404.1545(a)(1)–(2), 416.945(a)(1)–(2).

Moreover, when reviewing the ALJ's formulation of the RFC, courts in this District have also considered whether an ALJ has imposed stricter limitations on a Plaintiff's RFC than those that the medical examiner or other expert proffered. *See Said S.*, 2024 WL 2152737, at *10. In such a case, an ALJ's formulation of a more restrictive RFC can be a factor weighing in the Commissioner's favor. *Id.* ("The ALJ's RFC was largely consistent with both doctors' opinions concerning Plaintiff's limitations, and where it differed, the RFC was more restrictive than what either doctor proposed.").

Here, the ALJ determined that Plaintiff had the RFC to perform medium work with some restrictions, including sitting, standing, or walking for six hours during an eight-hour workday; frequently climbing ramps and stairs; frequently balancing, stooping, kneeling, crouching, and crawling; occasionally climbing ropes, ladders, or scaffolds; and occasionally being exposed to moving mechanical parts and unprotected heights.  AR 26.  Further, the ALJ proposed another RFC to the vocational expert during the administrative hearing that restricted Plaintiff to light work.  *Id.* at 32; 71–72.  As explained below, the ALJ's RFC assessment was supported by substantial evidence as the ALJ correctly evaluated Dr. Walker's medical opinion and Plaintiff's subjective complaints about her symptoms.

## II.    The ALJ Properly Weighed Dr. Walker's Opinion.

Plaintiff broadly claims the ALJ incorrectly evaluated the opinion of Dr. Walker, Plaintiff's treating physician since 2014, by rejecting the opinion as unpersuasive and mischaracterizing evidence in the record.  ECF Nos. 18-1 at 4–8; 21 at 1–3.  The Commissioner asserts the ALJ properly considered Dr. Walker's opinion based on the ALJ's evaluation of whether the opinion was consistent with and supported by the doctor's own treatment notes and examination findings as well as other evidence in the record.  ECF No. 19 at 13–17.

Under current regulations, an ALJ should not give specific evidentiary weight to any particular medical opinion, "including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).[9]    Instead, the ALJ considers five factors to determine the persuasiveness of any particular medical opinion.  *Id.* § 404.1520c(a).  Those five factors are: (1)

---

[9]    Before the SSA revised certain regulations in 2017, courts in this Circuit followed the "treating physician rule," requiring ALJs to give "controlling weight" to physicians' opinions so long as they were consistent with the record.  *See Emery P. v. Kijakazi*, No. 21-cv-3147, 2023 WL 5973991, at *8 (D.D.C. Sept. 14, 2023) (citing *Butler*, 353 F.3d at 1003); *see also Nancy W. v. Kijakazi*, No. 20-cv-2505, 2023 WL 4846769, at *7 (D.D.C. July 28, 2023) (collecting cases).

supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

"When evaluating the persuasiveness of a medical opinion, the most important factors for an ALJ to consider are supportability and consistency—ALJs must explain how those two factors were considered." *Nancy W.*, 2023 WL 4846769, at *8 (citing 20 C.F.R. § 404.1520c(b)(2)); *see also Shea M. v. Kijakazi*, No. 21-cv-2204, 2023 WL 3040602, at *10 (D.D.C. Apr. 21, 2023) (observing that, although an ALJ must consider the remaining factors, they do not have to "expressly explain that consideration in their decisions" (citations omitted)).  Supportability is measured by "the extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." *Minor v. Kijakazi*, No. 20-cv-3577, 2022 WL 17726903, at *8 (D.D.C. Dec. 16, 2022) (citations omitted).  Consistency captures "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citation omitted).

"[T]here is no specific format required for addressing supportability and consistency, and those terms need not be used in the opinion, provided that there is sufficient explanation for a reviewing court to determine that the ALJ analyzed those factors." *David W. v. Kijakazi*, No. 21-cv-3370, 2023 WL 5035935, at *11 (D.D.C. Aug. 8, 2023) (citations omitted); *Minor*, 2022 WL 17726903, at *8 ("Although these factors need to be addressed in the ALJ's opinion, they do not need to conform to a rigid format.").  Nevertheless, the ALJ must always provide "reasons for rejecting medical opinions in conflict with the ultimate RFC determination," and explicitly confront any material inconsistencies or ambiguities in the record. *Butler*, 353 F.3d at 1000 (citing SSR 96–8p, 1996 WL 374184, at *7); *see Cobb v. Astrue*, 770 F. Supp. 2d 165, 171 (D.D.C. 2011)

(holding the ALJ's RFC determination insufficient where the assessment of medical opinions contained only broad generalizations rather than analysis and citation to specific facts). When the ALJ specifically "credits and discredits certain medical opinions based on conflicting evidence in the record" and articulates their rational for doing so, the reviewing court will not "reweigh the evidence." *Bennett v. Saul*, No. 18-cv-1745 (CKK), 2019 WL 5549815 at *11 (D.D.C. Oct. 27, 2019); *see Colter*, 2022 WL 715218, at *11.

> Here, the ALJ adequately articulated his reasoning for rejecting Dr. Walker's opinion:
>
> While Dr. Walker is the claimant's treating provider, her assessment is not supported by her own examination findings or progress notes. Examinations from 2020 indicate normal respiratory findings, normal gait, no leg edema, intact cranial nerves, full strength, intact sensation, and intact memory. In 2021, Dr. Walker noted the claimant had benign hypertension and controlled diabetes; she did not include a full physical examination but noted there was no distress and the claimant showed normal respiratory effort. Dr. Walker cites "back pain" as an explanation for exertional limits, but there is no complaint of back pain or objective signs of spine impairment in her treatment notes. Though the claimant is assessed as obese, she has demonstrated full strength and intact sensation; she reported she was capable of performing medium work as of December 2020. For the same reasons, there is no support for restricting the claimant's use of her upper extremities. Therefore, the undersigned concludes this opinion is not supported by treatment notes or consistent with the longitudinal evidence. Instead, the undersigned concludes the claimant's diabetes, obesity and sleep apnea as well as non-severe impairments are adequately accommodated by a range of medium work with postural and environmental restrictions.

AR at 30–31 (internal citations to the record omitted).

Before this assessment, the ALJ also discussed other relevant medical evidence in the record. *See David W.*, 2023 WL 5035935, at *11 (finding the ALJ properly addressed an opinion's consistency by comparing it to other medical record evidence). Specifically, the ALJ discussed Dr. Haim's opinion that Plaintiff could perform medium work and found that opinion persuasive, outlined Plaintiff's medical history through the objective medial evidence in the record, and concluded the record displayed a pattern of conservative treatment for Plaintiff's conditions and

benign physical examinations. *Id.* at 28–30. These findings were inconsistent with Dr. Walker's opinion. *See David W.*, 2023 WL 5035935, at *11. The ALJ further pointed to Plaintiff's testimony that she was still working part-time at a childcare center in December 2020 as being inconsistent with Dr. Walker's restrictions on Plaintiff's upper extremities. AR at 30–31; *David W.*, 2023 WL 5035935, at *11 (finding the ALJ properly addressed an opinion's consistency by comparing it to the plaintiff's testimony).

With respect to the supportability of Dr. Walker's opinion, the ALJ concluded the opinion was generally at odds with Dr. Walker's own treatment notes and examinations of Plaintiff. AR at 30. For example, the ALJ highlighted that Dr. Walker's explanation for some of Plaintiff's restrictions was back pain, despite there being no reports of back pain for Plaintiff or objective medical evidence supporting that symptom in Dr. Walker's notes. *Id.*; *see Colter*, 2022 WL 715218, at *12 (finding ALJ had good reason to discount the portion of the expert's opinion that was psychiatric in nature because the medical record showed no mention or evaluation regarding psychiatric treatment); *David W.*, 2023 WL 5035935, at *11 (concluding ALJ properly addressed an opinion's supportability by analyzing opinion's justifications). The ALJ's review of Dr. Walker's opinion and ultimate conclusion that the record did not support the treating physician's conclusions reflect that the ALJ did not merely dismiss Dr. Walker out of hand as not credible. *See Cobb*, 770 F. Supp. 2d at 171. Instead, the ALJ cited to specific reports and facts from the record, comparing those findings against the medical opinion. *Nancy W.*, 2023 WL 4846769, at *8. Accordingly, substantial evidence supports the ALJ's conclusion rejecting Dr. Walker's opinion.

Plaintiff argues that the ALJ mischaracterizes and "cherry-pick[s]" the evidence when evaluating Dr. Walker's opinion. ECF No. 18-1 at 7. Namely, Plaintiff claims the ALJ

"conveniently ignored" two reports from October 16, 2019, and April 5, 2021, which reflected that Plaintiff displayed edema in her legs, a mildly antalgic gait, and reduced pedal pulses. *Id.*; AR at 311–14; 350–52. Plaintiff is incorrect. The ALJ expressly noted these reports in his analysis of Plaintiff's medical history from July 2019 through May 2021. *See* AR at 28–29 (noting Plaintiff "had some ongoing leg swelling in October [2019] but otherwise denied chest pain, shortness of breath, sensation loss, dizziness or changes in vision" and that "[i]n [an] April 2021 podiatry follow up, [Plaintiff] showed a mildly antalgic gait and non-pitting edema bilaterally," yet "retained intact sensation and full muscle strength with no instability in bilateral feet"). Indeed, the ALJ found that Plaintiff's medical records reflected she possessed a normal gait and no longer exhibited edema by December 2019. *Id.* Those records further established that, by May 2021, Plaintiff had her diabetes under control, had benign hypertension, and was not in distress or complaining of pain. *Id.* Further, the ALJ observed that Plaintiff had "periodic lower extremity swelling," but cited other record medical evidence reflecting that this condition was not so severe as to undermine the ALJ's findings, including that Plaintiff' "was not prescribed compression stockings or advised on leg elevation," was not "referred to other specialists," and "showed intact sensation and strength; demonstrating a mildly antalgic gait, at worst, but needed no assistive device." *Id.* at 29. The ALJ also cited to Plaintiff's hearing testimony, in which she stated she was working at a childcare center as of December 2020. *Id.*

Accordingly, the ALJ did not ignore the reports upon which Plaintiff relies. Instead, the ALJ squarely addressed them and explained why he viewed the legion of other medical reports and documentation, Plaintiff's own testimony regarding her ability to work as recently as December 2020, and a different doctor's opinion as more credible. *See Caitlin O. v. Kijakazi*, No. 17-cv-1939, 2022 WL 17370231, at *28 (D.D.C. Oct. 27, 2022); *cf. McCraw v. Berryhill*, No. 17-

21

cv-1011, 2019 WL 4222703, at *4 (D.D.C. Sept. 5, 2019) ("An ALJ is generally not expected to provide more detail than citing . . . the contradictory evidence in his report."). This is not mischaracterizing the record, nor is it cherry-picking. *See Matos v. Comm'r of Soc. Sec.*, No. 18-cv-4701, 2019 WL 4261767, at *3 (E.D.N.Y. Sept. 9, 2019) (observing that "the accusation of 'cherry-picking'" often employed in this type of litigation "is a two-way street").[10]

### III. The ALJ Properly Evaluated Plaintiff's Subjective Complaints.

Plaintiff next argues that, in evaluating Plaintiff's subjective complaints concerning her symptoms, the ALJ ignored relevant evidence, improperly dismissed contradictory evidence, and overstated Plaintiff's abilities to perform tasks in a full-time work setting. ECF No. 18-1 at 8–11. The Commissioner counters, contending the ALJ accurately considered the entire record and relied on substantial evidence to support his evaluation of Plaintiff's subjective complaints and, therefore, built a logical bridge between the evidence and his conclusions. ECF No. 19 at 17–24.

An ALJ must follow a two-step process when evaluating the intensity and persistence of a Plaintiff's asserted symptoms to determine the extent to which those symptoms limit the Plaintiff's ability to work. 20 C.F.R. § 404.1529(c)(1). First, the ALJ determines whether a Plaintiff's symptoms could be reasonably expected to arise from her alleged impairments. *Troy v. Colvin*, 266 F. Supp. 3d 288, 295 (D.D.C. 2017). Second, the ALJ "evaluate[s] the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms

---

[10]      Plaintiff also argues that "given that subsequent to her alleged disability onset date, Plaintiff's age category changed to closely approaching advanced age; had the ALJ properly credit[ed] Dr. Walker's opinion a finding of disability may have been directed under the Medical-Vocational Guidelines." ECF No. 18-1 at 8. Beyond a bare citation to those guidelines, Plaintiff provides no legal authority or further argument on this issue. Accordingly, to the extent the issue was raised, the Court deems this argument waived. *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[I]t is not the obligation of this Court to research and construct the legal arguments available to the parties. To the contrary, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." (internal quotation marks and citations omitted)).

limit the individual's ability to do basic work activities." SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). In conducting this second step, the ALJ must evaluate "all available evidence." *See Butler*, 353 F.3d at 1004 (defining "all the available evidence" as Plaintiff's statements, medical history, laboratory findings, objective medical evidence of pain, opinions of treating physicians, and other evidence that would speak to severity of pain).

Although an ALJ cannot "reject a claimant's statements about pain 'solely because they are not substantiated by objective medical evidence,' the ALJ may consider 'whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence.'" *McCormick v. Saul*, No. 18-cv-1704, 2021 WL 2634732, at *9 (D.D.C. June 25, 2021) (quoting *Butler*, 353 F.3d at 1004–05). An ALJ "must 'note[ ] the contradictory evidence in the record and 'explain [ ] the weight he has given to obviously probative exhibits.'" *Williams v. Saul*, No. 17-cv-2576, 2020 WL 2464519, at *4 (D.D.C. 2020) (quoting *Williams v. Shalala*, 997 F.2d 1494, 1499 (D.C. Cir. 1993)). In determining the credibility of a claimant's subjective complaints, "the ALJ's decision 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.'" *Washington v. Saul*, No. 20-cv-662, 2021 WL 2514691, at *7 (D.D.C. June 18, 2021) (quoting SSR 96-7p, 1996 WL 374186, at *2). "While contradictory evidence may exist" in the record, "credibility determinations are for the factfinder who hears the testimony;" a reviewing court will not redetermine an ALJ's articulated credibility findings. *Brown v. Bowen*, 794 F.2d 703, 706 (D.C. Cir. 1986); *see Grant v. Astrue*, 857 F. Supp. 2d 146, 156 (D.D.C. 2012) (observing that a

reviewing court must defer to the ALJ's credibility determinations and intervene only where an ALJ "fails to articulate a rational explanation for his or her finding[s]").

Here, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" at step one. AR at 28. But the ALJ concluded at step two that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely consistent with the medical evidence and other evidence in the record." *Id.*

In support of that conclusion, the ALJ noted Plaintiff's medical records displayed a history of conservative treatment for diabetes, sleep apnea, and obesity; benign physical examinations; and a general lack of complaints about back and leg pain. *Id.* at 29. The ALJ chronicled Plaintiff's medical history and cited to specific medical reports from Plaintiff's treating physician. *Id.* at 28–29. These reports documented how Plaintiff consistently displayed intact sensations, good muscle strength in her upper and lower extremities, a receptiveness to treatment, and demonstrated, at most, a mildly antalgic gait that required no assistive device. *Id.* at 28–29. The ALJ also found the opinion of Dr. Haim persuasive, who confirmed Plaintiff could perform a range of medium work. *Id.* at 29–30. Nonetheless, in assessing Dr. Haim's opinion, the ALJ included further limitations on the medium work Plaintiff could perform based on record evidence of Plaintiff's "obesity and non-severe foot and vision impairments." *Id.* at 30; *See Said S.*, 2024 WL 2152737, at *10. Moreover, the ALJ relied on Plaintiff's statements, highlighting that she testified at the hearing to still working part-time at a childcare center until December 2020, where she had to pick up children weighing twenty to thirty pounds. AR at 31, 67.[11] Accordingly, the ALJ conclusion,

---

[11]    Plaintiff takes issue with the ALJ's consideration of her part-time work, noting the RFC represents what a person can do in a work setting on a regular, full-time basis. ECF No. 18-1 at 9. But an ALJ may properly consider a Plaintiff's work activities during the relevant period of alleged

which was supported by substantial evidence, provided a logical bridge linking this evidence to his assessment of Plaintiff's subjective complaints. *See, e.g., Tiana O. v. Kijakazi*, No. 20-cv-2051, 2023 WL 5348747, at *11 (D.D.C. Aug. 21, 2023); *Callaway v. Berryhill*, 292 F. Supp. 3d 289, 297–98 (D.D.C. 2018).

Plaintiff contends that the ALJ erred in analyzing her statements about her symptoms because he failed to properly account for "abnormal examination findings" in the record, namely the medical reports documenting Plaintiff as having edema in her legs and an antalgic gait. ECF No. 18-1 at 9. Plaintiff claims that the ALJ did not consider the reduced pedal pulses she exhibited in those reports. ECF No. 18-1 at 9. In sum, Plaintiff claims "[t]he ALJ erred by failing to explain how these abnormal examination results, including antalgic gait and swelling of the lower extremities, supported a finding for a medium residual functional capacity." *Id.*

As discussed above, however, the ALJ explicitly accounted for Plaintiff's antalgic gait and swelling in the lower extremities when determining Plaintiff's RFC. *See* AR 29. The ALJ cited to Plaintiff's medical records, determining that Plaintiff historically possessed a normal gait and, at worst, recently demonstrated a mildly antalgic gait that did not require any assistive device. *Id.* In making that determination, the ALJ observed that Plaintiff, throughout her medical records, generally demonstrated intact sensations, muscle strength in her lower extremities, and no instability in her feet. *Id.* Similarly, the ALJ found that, although Plaintiff "had periodic lower extremity swelling," she had not been referred to a specialist or prescribed more serious treatment. *Id.* at 28–29. In addition, the ALJ noted Plaintiff had ceased exhibiting edema in the past after

---

disability, even if such work "was not substantial gainful activity," as the work still may shed light on Plaintiff's true capabilities. *See* 20 C.F.R. § 404.1571; *Pinkney*, 675 F. Supp. 2d at 21 (finding that, in assessing the plaintiff's subjective complaints, the ALJ properly considered the plaintiff's testimony that "he would work whenever there was work available and" could perform tasks such as lifting up to fifty pounds).

previously having such a condition. Although the ALJ did not expressly address Plaintiff's reduced pedal pulses, the ALJ accounted for the April 5, 2021 medical report where such pulses were present in the ALJ's opinion. *Id.* at 29. And that report indicated that Plaintiff still maintained intact sensations, muscle strength in her lower extremities, and no instability in her feet. *Id.* (noting that in Plaintiff's "April 2021 podiatry follow up, she showed a mildly antalgic gait and non-pitting edema bilaterally," but "retained intact sensation and full muscle strength with no instability in bilateral feet" and "had no complaints" in her April primary care notes). The ALJ's review of other medical records also demonstrated that Plaintiff was not in distress and had no specific complaints during a May 2021 appointment. *Id.* at 29.

In short, the Court concludes, in assessing Plaintiff's subjective complaints, the ALJ properly identified this conflicting evidence and weighed its credibility accordingly with the record as a whole. *See Colter*, 2022 WL 715218, at *14. The Court will not "second-guess the ALJ by reweighing the evidence" now. *Callaway*, 292 F. Supp. 3d at 298 (citation omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reversal (ECF No. 18) is **DENIED**, and Defendant's Motion for Affirmance (ECF No. 19) is **GRANTED**.

Date: March 12, 2025

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE